Stephen J. Thomas (State Bar No. 120751)
sjt@corporatefirm.com
LANDING LAW OFFICES, P.C.
17800 Castleton Street, Suite 657
City of Industry, CA 91748
Tel: (626) 771-1005
Fax: (626) 628-1905

Attorneys for Petitioner
FREEDOM INVESTORS CORP.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEDOM INVESTORS CORP.; | Case No.: 4:17-CV-03914-SBA |
| Petitioners, | **NOTICE OF MOTION; MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE** |
| vs. | |
| ZENAIDA P. GANTAN, | |
| Respondent. | [Concurrently Filed with Proposed Order] |
| | Date:      December 13, 2017<br>Time:      1:00PM<br>Courtroom: 210 |

//

//

//

1

# TABLE OF CONTENTS

BRIEF SUMMARY OF FACTS...................................................................................... 3

ARGUMENT................................................................................................................... 4

    I.    MAGISTRATE JUDGE SALLIE KIM'S REPORT IS SUBJECT TO DE NOVO REVIEW........................................................................................... 4

    II.    FREEDOM IS NOT THE SUCCESSOF OF MERRIMAC...................... 5

        a.  Express Agreement that Freedom Does Not Assume Pizzuti's/Merrimac's Liabilities........................................................ 6

        b.  Pizzuti Joining Freedom Was Not a Consolidation/Merger............... 6

        c.  Freedom Was Not a Mere Continuation of Merrimac........................ 7

        d.  There Was No Fraudulent Agreement Between Freedom and Pizzuti to Escape Obligations............................................................................. 8

    III.    THE MAGISTRATE JUDGE ERRED IN FINDING THAT THE ARBITRATION AWARD WAS NOT COMPLETELY IRRATIONAL.... 9

        a.  The Magistrate Judge's Finding is Inconsistent With the Authority on Which She Relies................................................................................. 9

            i.  There Was Never Any Agreement Between Freedom and Gantan....................................................................................... 10

        b.  The Magistrate Judge Unfairly Ignores Freedom's Arguments Regarding the Irrationality of the Arbitration Award.................................... 10

    IV.    THE MAGISTRATE JUDGE ERRED IN FINDING THAT THE ARBITRATION AWARD WAS NOT A MANIFEST DISREGARD OF THE LAW................................................................................................... 11

THIS MOTION IS TIMELY........................................................................................ 12

CERTIFICATION REGARDING GOOD FAITH MEET AND CONFER............ 12

CONCLUSION..................................................................................................14

**TABLE OF AUTHORITIES**

**CASES**

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of the Account*..................................................................................................9

*Bosack v. Soward*, 586 F.3d 1096 (9th Cir. 2009)................................9, 11

*Centerpoint Energy, Inc. v. Superior Court*, 157 Cal.App.4th 1101 (2007)...............7

*Fisher v. Allis-Chalmers Corp. Product Liability Trust*, 95 Cal.App.4th 1182 (2002)..5

*Franklin v. USX Corp*, 87 Cal.App.4th 615 (2001).........................................7

*Lagstein v. Certain Underwriters at Lloyd's London*, 607 F.3d 634 (9th Cir. 2010)...................................................................................9, 11

*Ortiz v. South Bend Lathe*, 46 Cal. App. 3d 842 (1975)....................................5

*U.S. v. Rivera-Guerrero*, 377 F.3d 1064 (9th Cir. 2004)..................................4

*United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376 (3rd Cir. 1995)................................................................................9

**STATUTES AND REGULATIONS**

9 U.S.C. §10(a)(4)..........................................................................2

28 U.S.C. §636(b)(1)(B)....................................................................4

28 U.S.C. §636(b)(1)(C)................................................................2, 12

Fed. R. Civ. P. 72(b)(2)................................................................2, 12

FINRA Rule 1017...........................................................................6

Local Rule 72-3........................................................................2, 12

**TO THE HONORABLE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSELS:**

PLEASE TAKE NOTICE that, pursuant to Local Rule 72-3, Fed. R. Civ. P. 72(b)(2), and 28 U.S.C. §636(b)(1)(C), on December 13, 2017, at 1:00PM, or as soon thereafter as the matter may be heard in Courtroom 210 of the above-entitled Court, located at 1300 Clay Street, Second Floor, Oakland, California, 94612, Petitioner FREEDOM INVESTORS CORP. ("Freedom" or "Petitioner") will move the Court for De Novo Determination of Dispositive Matter Referred to Magistrate Judge.

Petitioner seeks to move this Court to review and reverse portions of the Magistrate Judge's Report and Recommendation denying Petitioner's Petition to Vacate Arbitration Award, on the grounds that the Magistrate Judge erred in holding that Petitioner failed to establish that the arbitration panel exceeded its powers pursuant to 9 U.S.C. §10(a)(4).

The Magistrate Judge's Report and Recommendation denying Freedom's Petition to Vacate Arbitration Award should not be followed, and Freedom's Petition to Vacate Arbitration Award should be granted.

This Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities, the previous filings of Petitioner's Petition to Vacate Arbitration Award, the pleadings and papers filed herein, the other written and oral evidence as may be presented at the time of hearing, and upon all other matters as the Court may take judicial notice of and which the Court deems appropriate.

# MEMORANDUM OF POINTS AND AUTHORITIES

## BRIEF SUMMARY OF FACTS

On October 29, 2014, Zenaida Gantan ("Gantan") filed an arbitration claim with FINRA, claiming that her broker, Chad Thompson ("Thompson"), completely mismanaged her accounts, both regular and IRA; and that Stephen Pizzuti ("Pizzuti"), as a principal and control person for Merrimac ("Merrimac"), failed to properly supervise Thompson's activities.

Petitioner Freedom was subsequently brought into the claim. Gantan claimed Freedom is a successor firm to Merrimac, and thus jointly and severally liable for the claims against Merrimac as a successor in interest.

The hearings on the FINRA arbitration claims commenced on May 8, 2017, and ended on May 10, 2017.

On June 7, Freedom was served with the decision of the arbitrators, in which Freedom was held to be jointly and severally liable with Merrimac to Gantan, in the amount of $215,650, not including interest.

On July 11, 2017, Freedom filed a Petition to Vacate Arbitration Award ("Motion to Vacate") with the United States District Court, Northern District of California. A courtesy copy of the previously filed Supporting Declaration of Joel Blumenshein in support of the Motion to Vacate is being attached to this Motion as Exhibit A ("EXH A").

On August 16, 2017, Freedom filed a Notice of Non-opposition, noting that there were no oppositions filed with regards to the Motion to Vacate.

On August 21, 2017, counsel for Freedom appeared in front of United States Magistrate Judge Sallie Kim for hearing on the Motion to Vacate. No other parties made any appearances.

On August 23, 2017, at the request of the Magistrate Judge, Freedom filed supplemental declarations in support of the Motion to Vacate.

On September 7, 2017, Gantan declined to consent to the jurisdiction of the Magistrate Judge.

On September 7, 2017, Magistrate Judge Sallie Kim filed her Report and Recommendation ("Magistrate Report") regarding Freedom's Motion to Vacate, recommending that the Motion to Vacate be denied.

Freedom now submits this motion in objection to the Magistrate Report.

## ARGUMENT

### I. MAGISTRATE JUDGE SALLIE KIM'S REPORT IS SUBJECT TO *DE NOVO* REVIEW

The Magistrate Report is a "dispositive motion" under 28 U.S.C. §636(b)(1)(B), and thus subject to *de novo* review. A magistrate judge's recommendation report is dispositive if it "conclusively determine[s] the disputed question... [that] is properly considered a claim or defense of a party." *U.S. v. Rivera-Guerrero, 377 F.3d 1064, 1068-69 (9th Cir. 2004)*.

Here, the Magistrate Judge improperly concluded that the arbitration award is neither completely irrational nor a manifest disregard of the law by: issuing a finding inconsistent with the authority on which she relies; unfairly ignoring Freedom's arguments regarding the irrationality of the arbitration award; and erroneously holding that the arbitrators properly acknowledged and followed the applicable laws.

Petitioner Freedom incorporates the prior Motion to Vacate, and all its related filings, into this Motion. Freedom's Motion to Vacate should be granted as the arbitration award is completely irrational, and in manifest disregard of the law.

## II.     FREEDOM IS NOT THE SUCCESSOR OF MERRIMAC

There are four distinct ways in order for successor firm liability to attach: (1) the purchasing company expressly or implied assumes the predecessor's liabilities; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation was a mere continuation of the selling corporation; and (4) the purchase transaction was fraudulent and was made in order to escape obligations. *Ortiz v. South Bend Lathe*, 46 Cal. App. 3d 842, 946 (1975).

There is generally a rule of successor nonliability whereby when "a corporation purchases, or otherwise acquires by transfer, the assets of another corporation, the acquiring corporation does not assume the selling corporation's debts and liabilities." *Fisher v. Allis-Chalmers Corp. Product Liability Trust*, 95 Cal.App.4th 1182, 1188 (2002).

None of the successor firm requirements are met, which is a clear indication that the arbitrators' judgment is completely irrational, and in manifest disregard of the law.

### a. Express Agreement that Freedom Does Not Assume Pizzuti's/Merrimac's Liabilities

Freedom only entered into an independent OSJ Licensee Agreement with Pizzuti only, not with Merrimac – Freedom never entered into any kind of agreement with Merrimac. [*See* EXH A ¶13-25]. Furthermore, the Agreement with Pizzuti expressly states that all of Pizzuti's clients were to remain the property of Pizzuti, and thus any and all legal issues that arose with regards to Pizzuti's clients would remain the sole responsibility of Pizzuti. [*See* EXH A ¶14].

Pizzuti even attempted to sell his clients to other third parties, to which Freedom never objected. [*See* EXH A ¶38].

### b. Pizzuti Joining Freedom Was Not a Consolidation/Merger

Pursuant to *FINRA RULE* 1017, an application is required when a FINRA member undergoes a change to its ownership, control, or business operations such that: the member merges with another member; the member acquires another member; at least 25% of the member's assets are acquired or transferred to another member; there is a change in ownership that results in one person owning or controlling 25% of the member's equity; or a material change in the member's business operations take place.

FINRA never required the filing of any 1017 Application after Pizzuti joined Freedom – Freedom never merged with Merrimac, Freedom never acquired Merrimac, nor was the 25% threshold met. [*See* EXH A ¶37]. Freedom never entered into any type of agreement with Merrimac. [*See* EXH A ¶15-25].

Furthermore, the total production from all the previous Merrimac registered representatives only amounted to 17% of Freedom's total revenue for the 2015 year, and 14% of Merrimac's revenue for the last year they were in business. [*See* EXH A §36]. With such low percentages, it cannot be ruled that Freedom was a successor to Merrimac.

### c. Freedom Was Not a Mere Continuation of Merrimac

In <u>Franklin v. USX Corp.</u>, 87 Cal.App.4th 615, 625 (2001), the court stated that "mere continuation" theory for successor liability is a subset of the de facto merger theory. The crucial factor for both theories is whether (1) adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations. (<u>CenterPoint Energy, Inc. v. Superior Court,</u> 157 Cal.App.4th 1101, 1121 (2007)); see also *Franklin*, *supra*, at p. 625 [crucial factor for successor liability is inadequate consideration for both theories of de facto merger and mere continuation].) Neither of these factors are met.

Pizzuti never became a registered principal of Freedom. [*See* EXH A ¶29]. Although Pizzuti did work out of a new independent broker office of Freedom, the

location of the new office was different than that of any Merrimac location. [*See* EXH A ¶25-28]. Furthermore, this new office was supervised by Patrick Murphy, a longtime principal of Freedom that had never previously worked with Merrimac or with Pizzuti. [*See* EXH A ¶28].

Freedom did not hire any of the management personnel from Merrimac, nor did Freedom hire any of the supervisory personnel from Merrimac. [*See* EXH A ¶32]. Freedom also never purchased any of Merrimac's corporate assets. [*See* EXH A ¶15-25].

Thompson, the broker that was in charge of Gantan's account, had already left Merrimac by the time Freedom entered into the agreement with Pizzuti, and was never hired by Freedom. [*See* EXH A ¶33].

Bob Nash, the Merimac supervisor that Pizzuti had originally placed in charge of overseeing Thompson's accounts, was never hired by Freedom. [*See* EXH A ¶34].

Finally, Gantan's account was never transferred to, or placed under the supervision of, Freedom – Freedom never had any responsibility over Gantan's account. [*See* EXH A ¶35].

It is clear that the "mere continuation" theory does not apply here.

### d. There Was No Fraudulent Agreement Between Freedom and Pizzuti to Escape Obligations

Freedom never agreed to merge with Merrimac, nor did Freedom ever agree to acquire Merrimac. [*See* EXH A ¶15-20].

Freedom did not seek to add Pizzuti onto its team in an attempt to avoid any obligations – quite the opposite, Freedom was seeking to have Pizzuti help its team, as an independent OSJ, in an attempt to grow and expand. [*See* EXH A ¶9-13].

### III. THE MAGISTRATE JUDGE ERRED IN FINDING THAT THE ARBITRATION AWARD WAS NOT COMPLETELY IRRATIONAL

The irrationality standard of review is quite deferential as "there must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of the Account*, 618 F.3d 277, 295-296 (3rd Cir. 2010) (quoting *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3rd Cir. 1995)). The evidence is clear; there is absolutely no support for the claim that Freedom is a successor firm to Merrimac.

#### a. The Magistrate Judge's Finding is Inconsistent With the Authority on Which She Relies

The Magistrate Judge relies on *Lagstein v. Certain Underwriters at Lloyd's London*, 607 F.3d 634, 642 (9th Cir. 2010), noting that an arbitration award is completely irrational only where the arbitration decision "'fails to draw its essence from the agreement.'" [*See* Magistrate Report, pg. 6, line 11-12]. The Magistrate Judge further notes that an arbitration award "'draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions.'" [*See* Magistrate Report, pg. 6, line 13-15]. The Magistrate Judge also cites *Bosack v.*

9

*Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009), noting that "'[t]he question is whether the award is irrational with respect to the contract, not whether the panel's findings of fact are correct and internally inconsistent.'" [*See* Magistrate Report, pg. 6, line 16-18]. Case law thus requires the arbitration award to be viewed in light of the agreement between the parties.

### i. There Was Never Any Agreement Between Freedom and Gantan

By ruling that Freedom failed to establish that the arbitration award is "completely irrational," the Magistrate Judge effectively held that there must have been an agreement between Freedom and Gantan. Thompson, the broker that directly handled Gantan's account, was never hired by Freedom [*See* EXH A ¶33], and Gantan's account was never under the supervision of Freedom [*See* EXH A ¶35]. Freedom thus never entered into any agreement with Gantan.

It is thus improper for the Magistrate Judge to hold that the arbitration award is not completely irrational when viewed in light of the agreement between the parties (or lack thereof). The authority on which the Magistrate Judge relies requires the existence of an agreement between Freedom and Gantan, yet there was never any type of agreement between Freedom and Gantan.

### b. The Magistrate Judge Unfairly Ignores Freedom's Arguments Regarding the Irrationality of the Arbitration Award

The Magistrate Judge notes that "[g]iven that arbitrators need not state the reasons for their awards unless the agreement provides, the panel's failure to provide

a reasoned award is not error. Other than the foregoing, the Petitioner makes no argument that meaningfully relies upon the irrationality aspect..." [*See* Magistrate Report, pg. 6, line 23-26].

In her Magistrate Report, the Magistrate Judge only refers to Freedom's comments in "its statement of facts about the arbitration process... that the award 'seems to be based on the notion that Respondent had a 'perfect market return' and that the panel never held that actual 'churning' of the Respondent's IRA took place.'" [*See* Magistrate Report, pg. 6, line 19-21].

However, in its Motion to Vacate, Freedom had provided multiple arguments as to why the arbitration award is "completely irrational" as there is absolutely no basis for the claim the Freedom is a successor firm to Merrimac. [*See* Motion to Vacate, pg. 16, line 15 – pg. 17, line 27]. All such arguments by Freedom were effectively and unfairly ignored by the Magistrate Judge when issuing her Magistrate Report.

### IV. THE MAGISTRATE JUDGE ERRED IN FINDING THAT THE ARBITRATION AWARD WAS NOT A MANIFEST DISREGARD OF THE LAW

To vacate an arbitration award based on manifest disregard of the law, "it must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Lagstein*, 607 F.3d at 641. The Magistrate Judge further relies on *Bosack*, in noting that "there must be some evidence in the record, other than the

result, that the arbitrators were aware of the law and intentionally disregarded it." [*See* Magistrate Report, pg. 7, line 12-13].

The Magistrate Judge holds that there "is no reference to a specific location in the record where the panel acknowledged the law and subsequently chose to ignore it." [*See* Magistrate Report, pg. 7, line 17-18].

Even though the arbitrators in this matter granted their award without a full explanation of their reasoning, there can be no other conclusion but that the arbitrators found Freedom to be the successor of Merrimac – a conclusion completely unsupported by law and fact. Freedom's Motion to Vacate clearly pointed out the applicable laws with the arbitrators failed to follow. [*See* Motion to Vacate, pg. 11, line 18 – pg. 15, line 24].

The law is clear that Freedom cannot be held as a successor firm to Merrimac.

### THIS MOTION IS TIMELY

Pursuant to 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(2); Civil L.R. 72-3, and the instructions of the Magistrate Report, Petitioner has 14 days after service of the Magistrate Report to file any objections.

The Magistrate Report was issued on September 7, 2017, thus giving Freedom until September 21, 2017 to file this Motion. This Motion is timely.

### CERTIFICATION REGARDING GOOD FAITH MEET AND CONFER

Pursuant to this Court's Standing Order, this office hereby certifies that it, in good faith, attempted to meet and confer with Counsels for Gantan. On September

20, 2017, at approximately 4:30pm Pacific Time, this office attempted to call both Attorney Richard Fosher, and Attorney Frank Sommers. Neither were available at their respective offices, so voicemail messages were left with both: indicating our intentions to file this motion; our intentions to have this motion heard on November 1, 2017 at 1:00pm; and asking that they contact us back. After the voicemail messages, an email was also sent to both attorneys: again indicating the intentions to file this motion; to have this motion heard on November 1, 2017 at 1:00pm; and asking that they contact us back. As of September 20, 2017, this office did not receive any replies (whether via phone, or email) from either of Gantan's counsels.

On September 21, 2017, at approximately 10:15am Pacific Time, this office again attempted to call both Attorney Richard Fosher, and Attorney Frank Sommers. Again, neither were available, and voicemail messages were left with both, noting the attempt to meet and confer. After the voicemail messages, another email was sent to both attorneys, noting the attempt to meet and confer.

On September 21, 2017, at approximately 10:50am Pacific Time, after discovering that this Court holds its civil law and motion calendar on the second Wednesday of each month, this office again attempted to contact both Attorney Richard Fosher, and Attorney Frank Sommers. This office left voicemails, and emails with both, informing them that instead of the previously mentioned date of November 1, 2017, this motion will instead be scheduled for December 13, 2017, at 1:00pm.

On September 21, 2017, at approximately 12:30pm Pacific Time, Attorney Richard Fosher replied and noted that he has no objections to the filing of this Motion.

This office has in good faith met the meet and confer requirements.

## CONCLUSION

The lack of evidence is clear, there is absolutely no support for the claim that Freedom is a successor firm to Merrimac – the arbitrators' award is completely irrational. The law is clear, Freedom cannot be held as a successor firm to Merrimac – the arbitrators completely disregarded the law.

In her report, the Magistrate Judge issued a finding inconsistent with the authority on which she relied; unfairly ignored Freedom's arguments regarding the irrationality of the arbitration award; and erroneously held that the arbitrators properly acknowledged and followed the applicable laws.

For the reasons stated above, the Magistrate Report denying Freedom's Motion to Vacate should not be followed, and Freedom's Motion to Vacate should be granted.

Respectfully submitted,
LANDING LAW OFFICES, PC

By: /s/ Stephen J. Thomas
STEPHEN J. THOMAS
Attorneys for Petitioner
FREEDOM INVESTORS CORP.

Dated: September 21, 2017

PROOF OF SERVICE )
STATE OF CALIFORNIA ) SS.
COUNTY OF LOS ANGELES )

__X__ The undersigned, an employee of LANDING LAW OFFICES, P.C., hereby on oath states:

_____ The undersigned attorney hereby certifies:

that a copy of the foregoing **NOTICE OF MOTION; MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
was served upon the attorneys of record by depositing a copy of same enclosed in an envelope addressed as follows:

Richard B. Fosher, Esq.            Frank Feldher Sommers IV, Esq.
Oakes & Fosher, LLC.               SOMMERS & SCHWARTZ LLP
1401 South Brentwood Blvd. Suite 250   1 Embarcadero Ctr., Suite 800
St. Louis, MO 63144                San Francisco, CA 94111

and:

__X__ by depositing said envelope with EXPRESS/OVERNIGHT postage fully prepaid in the U.S. Mail at City of Industry, California;

_____ by email/facsimile;

_____ by causing same to be hand-delivered to the same address;

on September 21, 2017

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed September 21, 2017 at City of Industry, California.

_____
Bey Wu